UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**ORLIN C. HAWKINBERRY**,                     Case No. 5:10 CV 1930

      Plaintiff,                                          Judge John R. Adams

      v.                                                    REPORT AND RECOMMENDATION

**COMMISSIONER OF SOCIAL SECURITY,**

      Defendant.                                       Magistrate Judge James R. Knepp II

## Introduction

Plaintiff Orlin Hawkinberry appeals the administrative decision to cease supplemental security income benefits as of May 1, 2006 due to medical improvement. The district court has jurisdiction under 42 U.S.C. § 1383(c)(3).

This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(1). For the reasons stated below, the undersigned recommends the Commissioner's decision be reversed and remanded.

## Background

Plaintiff was found disabled based on mental impairments as a child in 1995 and awarded SSI benefits. (Tr. 15, 31-32, 34). Following a Continuing Disability Review after Plaintiff turned 18, in March 2002, the agency found Plaintiff continued to be disabled. (Tr. 15, 41-42, 54). After another review in May 2006, the agency determined Plaintiff's condition had improved and he was no longer disabled as of May 1, 2006. (Tr. 15, 54). A state hearing officer affirmed the disability cessation finding on May 30, 2007. (Tr. 54-62). Plaintiff then sought a hearing before an Administrative Law Judge (ALJ). (Tr. 77). Plaintiff appeared *pro se* at the hearing and testified. (Tr.

261-71).

After reviewing the evidence, the ALJ found Plaintiff was not disabled because he could perform a significant number of unskilled jobs, despite his impairments. (Tr. 14-20). The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (Tr. 4-7); 20 C.F.R. § 416.1481.

**Factual Background**

Plaintiff was born in 1984 and was 24 years old at the time of his hearing. (Tr. 263). He had completed eighth grade in special education classes (Tr. 54) and previously worked as a road crew flagman (Tr. 237) and making windows (Tr. 265).

*Medical Records*

In February 2006, Plaintiff saw treating psychiatrist Dr. Brian Welsh. (Tr. 166-67). Dr. Welsh diagnosed panic disorder in remission and obsessive compulsive disorder. (Tr. 166). Plaintiff reported obsessing over whether the house was going to burn down. (*Id.*). Dr. Welsh recommended Plaintiff follow up with his primary doctor in three to four months, and that he "was also encouraged to find work and if unable to do so, perhaps could be referred to vocational rehab." (Tr. 167). That same month, Dr. Clapper, who had seen Plaintiff in 2004 and 2005 opined Plaintiff "is not at all disabled in any way". (Tr. 137 (emphasis in original)). Dr. Clapper did not submit any treatment records.

In April 2006, psychologist Dr. Donald Degli evaluated Plaintiff at the request of the state agency. (Tr. 138-40). Plaintiff reported he lived with his sister, and that he had a girlfriend for about a year. (Tr. 138). Dr. Degli noted Plaintiff struck him as "mostly as being lethargic, lacking direction, dependent, but quite at ease, not depressed, not clearly anxious." (Tr. 139). He also stated

2

Plaintiff "hardly convinced [him] that he is troubled with a severe mood disturbance such as bipolar disorder" and Dr. Degli was "most convinced that [Plaintiff] is troubled with a mixed personality disorder." (*Id.*). Dr. Degli concluded Plaintiff: 1) could meet interaction demands with peers or supervisors in a low competition work setting, but would have difficulty interacting with the general public; 2) could understand, remember, and follow simple directions and do simple or routine repetitive tasks in a mildly competitive workplace; 3) would have variable ability to maintain attention, concentration, persistence, and pace in a competitive work setting "due to temperament problems . . . related to personality disorder"; and 4) mild to moderate impairment in the ability to withstand the stresses and pressures of a competitive workplace. (Tr. 140). In summary, Dr. Degli concluded: "Psychologically, [Plaintiff] is mildly to moderately impaired in his ability to meet the demands of competitive adult employment." (*Id.*).

In May 2006, state agency psychiatrist Nancy McCarthy reviewed Plaintiff's records and assessed obsessive compulsive disorder and personality disorder, not otherwise specified. (Tr. 142-59). On a Mental Residual Functional Capacity Assessment form, Dr. McCarthy noted Plaintiff had moderate limitations in 1) his ability to understand, remember and carry out detailed instructions; 2) ability to interact appropriately with the general public; 3) ability to accept instructions and respond appropriately to criticism from supervisors; 4) ability to get along with coworkers or peers; and 5) ability to set realistic goals or make independent plans. (Tr. 157-58).

Also in May 2006, Dr. Welsh reported Plaintiff was doing well on Zoloft. (Tr. 164). He noted improvement in Plaintiff's obsessive compulsive disorder and that his panic disorder was still in remission. Plaintiff reported several stressful events in his life, but "said that throughout all these stressors he seems to be holding it together and denied any significant issues with depression." (*Id.*).

In September 2006, Plaintiff again reported to Dr. Welsh that the Zoloft was helping with his anxiety. (Tr. 163). Plaintiff also reported feeling "somewhat lazy and low energy." (*Id.*). Dr. Welsh again assessed panic disorder in remission and improving obsessive compulsive disorder and assigned a Global Assessment of Functioning (GAF) score of 60.[1]

In response to a letter from the Bureau of Disability Determination, Dr. Clapper again noted Plaintiff was "not disabled in any capacity" in September 2006. (Tr. 178-81). Dr. Clapper again attached no records or explanation.

In October 2006, state agency reviewing psychologist Mel Zwissler reviewed Plaintiff's records and assessed panic disorder in remission. (Tr. 189-206). On a Mental Residual Functional Capacity Assessment form, Dr. Zwissler stated Plaintiff would have moderate limitations in: 1) the ability to understand, remember, and carry out detailed instructions; 2), the ability to interact with the general public; 3)  the ability to accept instructions and respond to criticism from supervisors; 4) the ability to get along with coworkers or peers; and 5) the ability to set realistic goals and make independent plans. (Tr. 203-04).

In February 2009, Dr. Degli performed a second consultative examination at the ALJ's request. (Tr. 237-49). Dr. Degli opined that Plaintiff was moderately impaired in his abilities to: 1) meet interaction demands with peers, supervisors or the adult public in a competitive workplace; 2) follow directions or do routine tasks for meaningful periods in a competitive work environment; 3) maintain attention, concentration, persistence, and pace; 4) withstand the stresses and pressures of

---

[1] A GAF score of fifty-one to sixty "indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks), or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 503 (6th Cir. 2006) (internal quotation omitted).

a competitive workplace. (Tr. 240). Dr. Degli administered the Minnesota Multiphasic Personality Interview, but doubted its results. (Tr. 239). He stated that "[t]he profile response pattern in fact may indicate that although the claimant could read the hundreds of statements in the inventory, he may not have been able to comprehend the meaning of his statements or the implications of answering true or false to those statements." (*Id.*). In summary, Dr. Degli concluded: "Psychologically, [Plaintiff] is moderately impaired in his ability to meet the demands of competitive adult employment." (Tr. 240). He also stated Plaintiff "cannot be relied upon to manage money matters appropriately." (*Id.*).

Also in February 2009, Dr. Michael Magoline performed an orthopaedic consultive examination based on Plaintiff's claims of low back pain. (Tr. 244-46). He concluded Plaintiff's spine was "essentially normal." (Tr. 246). Although he stated that "[f]urther evaluation of the lumbar spine with a CT Scan or an MRI would be helpful", he concluded that "[f]rom an orthopaedic standpoint, however, at this point [Plaintiff] would not have any restrictions in his activity." (*Id.*).

*Hearing Testimony*

Plaintiff appeared at a hearing before the ALJ on December 23, 2008. (Tr. 261-71). In response to the ALJ's question, he stated that he understood his right to an attorney at the hearing, but said: "I'll go without one." (Tr. 263). Plaintiff reported he continued to see Dr. Welsh every three to four months for his anxiety even though the record at the time of the hearing only contained records through October 2006. (Tr. 264). He reported that the longest job he ever held was just over a year making windows. (Tr. 265). Plaintiff quit because they were "working [him] too much" – twelve hour days. (*Id.*). He testified his back would hurt while working, but that he hadn't been to

a doctor because he doesn't have the money. (*Id.*). Plaintiff also testified that he did not take another job because it would have required him to read a ruler or tape measure and he didn't know how. (Tr. 269). Plaintiff reported he had quit his job as a construction flagger because he "thought it was worthless." (Tr. 270). Plaintiff testified his average day consists of fixing microwave meals, watching TV, and playing video games. (Tr. 266-67). The ALJ did not ask Plaintiff how long he spends on each activity. He also stated he does dishes "every now and then." (*Id.*). Plaintiff testified he often doesn't like taking showers because he doesn't feel like going upstairs. (Tr. 267).

As the hearing concluded, the ALJ explained: "What I will do, Mr. Hawkinberry, is get the updated records from your doctor and then write a Decision." (Tr. 268). He also stated: "Okay. At this point I'll close the hearing. I'll get the updated medical records from Dr. Marsh [sic]. Mr. Hawkinberry, I possibly may send you out for some consultative exams. All you have to do is show up at the day and time that appears in the letter." (Tr. 270). The hearing lasted sixteen minutes.

## Standard of Review

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a

preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). However, procedural errors can be a basis for overturning the decision of the Commissioner, even if that decision is supported by substantial evidence. *See Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

When the cessation of benefits is at issue, as here, the central question is whether the claimant's medical impairments have improved to the point where he is able to perform substantial gainful activity. 42 U.S.C. § 423(f)(1). Improvement is measured from "the most recent favorable decision" that the claimant was disabled. 20 C.F.R. § 416.994(b)(1)(I). There is no presumption of continuing disability. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286-87 n. 1 (6th Cir. 1994). Instead, the Commissioner applies the procedures that are outlined in 20 C.F.R. § 416.994 to determine whether a claimant's disability has ended and that he is now able to work.

The first part of the evaluation process, then, focuses on medical improvement. The regulations define medical improvement as "any decrease in the medical severity of [a claimant's] impairment§ which was present at the time of the most recent favorable medical decision that [a claimant was] disabled or continued to be disabled." 20 C.F.R. § 416.994(b)(1)(I). A determination of medical improvement "must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the claimant's] impairment(s)." *Id.* And a medical improvement is related to an individual's ability to work only "if there has been a decrease in the severity ... of the impairment(s) present at the time of the most recent favorable medical decision and an increase in [the claimant's] functional capacity to do basic work activities . . . " *Id.* § 416.994(b)(1)(iii); *see also Nierzwick v. Comm'r of Soc. Sec.*, 7 F. App'x 358 (6th Cir. 2001).

7

The second part of the evaluation process relates to ability to engage in substantial gainful activity. Here the regulations incorporate many of the standards set forth in regulations governing initial disability determinations. *See* 20 C.F.R. § 416.994(b)(5) & (f)(7). The difference, of course, is that the ultimate burden of proof lies with the Commissioner in termination proceedings. *Id.*; *Griego v. Sullivan*, 940 F.2d 942, 944 (5th Cir. 1991).

## Discussion

Plaintiff raises three related challenges to the ALJ's decision:

1. The ALJ did not have substantial evidence that Plaintiff's medical improvement was significant enough to allow him to be gainfully employed. The ALJ did not have that evidence because he failed to recontact the treating physician. (Doc. 14, at 6-7).

2. The ALJ did not articulate a valid argument for finding the Plaintiff not credible. (*Id.* at 8).

3. The ALJ failed in his duty to develop the record. (*Id.* at 10).

For the reasons discussed below, Plaintiff's first and third contentions have merit.

### *Substantial Evidence & Duty to Develop Record*

Plaintiff's first and third contentions are related.  Plaintiff contends that the ALJ's decision lacks substantial evidence in part because he did not obtain additional records from Dr. Welsh after stating he would. Plaintiff contends that the ALJ failed to develop a full and fair record. The Commissioner contends substantial evidence supports the ALJ's decision and the ALJ reasonably chose not to obtain the additional records.

*Duty to Develop*

An ALJ has a duty to develop the record because of the non-adversarial nature of Social Security benefits proceedings.  *See Heckler v. Campbell*, 461 U.S. 458, 470 (1983). The Sixth

Circuit has emphasized that this duty is particularly important when a claimant is acting *pro se*. *See Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983). In *Lashley*, the Sixth Circuit explained:

> "[A]n [ALJ's] . . . basic obligation to develop a full and fair record rises to a special duty when an unrepresented claimant unfamiliar with hearing procedures appears before him." . . . To satisfy this special duty[,] the [ALJ] . . . must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." . . . He must be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."

*Id.* at 1051-52 (citations omitted). The duty to develop the record, however, is balanced with the fact that "[t]he burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) (citing 20 C.F.R. §§ 416.912, 416.913(d)). Although the Court must "scrutinize the record with care" where the claimant appears before the ALJ without counsel, the lack of counsel does not automatically result in reversal. *Lashley*, 708 F.2d at 1052. In determining whether it is necessary to remand for clarification of the record, the Court is guided by whether the record reveals evidentiary gaps which result in unfairness or clear prejudice. *See Brown v. Shalala*, 44 F. 3d 931, 935-36 (11th Cir. 1995).

The record indicates Plaintiff had completed eight years of school, but in special education classes. (Tr. 54, 237). Dr. Degli noted Plaintiff had learning disabilities. (Tr. 240). Plaintiff was *pro se* before the ALJ and the hearing lasted only sixteen minutes, and produced a nine page transcript. *See Lashley*, 708 F.2d at 1052 (holding that ALJ failed to fulfill his duty to fully develop the record where the hearing lasted 25 minutes, was fully transcribed in 11 pages, and the plaintiff "possessed limited intelligence, was inarticulate, and appeared to be easily confused"). Although Plaintiff appeared to generally understand the purpose of the hearing, and responded appropriately to the

ALJ's questions, the ALJ's questions were not thorough. For example, toward the end of the hearing when the ALJ asked Plaintiff: "Is there anything that we haven't talked about that you would like to tell me or you feel I should know?", Plaintiff responded: "I don't know." (Tr. 268). The ALJ questioned Plaintiff about his work history, but did not ask any questions about the limiting effects of Plaintiff's psychological issues other than fairly cursory questioning about his daily activities. (Tr. 266-68).

This, combined with the ALJ's failure to obtain Plaintiff's most recent treatment records –as discussed below – illustrates the ALJ's failure to fulfill his duty to develop the record.

*Failure to Obtain Records*

Because this is a cessation case, the ALJ was required to compare Plaintiff's current condition to "the most recent favorable decision" that the claimant was disabled. 20 C.F.R. § 416.994(b)(1)(I). A claimant's "current condition" under 42 U.S.C. § 423(f) means "an individual's ability to perform substantial gainful activity *at the time of the hearing.*" *Difford v. Sec'y of Health & Human Servs.*, 910 F.2d 1316, 1320 (6th Cir. 1990).[2] Plaintiff's most recent finding of disability was March 25, 2002, and the hearing in this case was held on December 23, 2008. The only post-2006 medical record the ALJ considered was Dr. Degli's February 2009 consultative examination. The ALJ, however, stated that he only gave Dr. Degli's opinion "some weight" and gave "greater weight to Dr. Welsh's treatment notes because Dr. Welsh is [Plaintiff's] treating psychiatrist and is

---

[2] This does not prevent an ALJ from determining that a claimant was not disabled for some period of time between the prior finding of disability and the hearing date, even if the claimant is disabled at the time of the hearing. *Difford*, 910 F.3d at 1320 ("We note, however, that interpretation of § 423(f) to require an assessment of [claimant's] condition as of the 1988 hearing does not preclude a finding by the Secretary that the length of time of [claimant's] employment with Youngstown Trailer is a period of non-disability for which benefits may be withheld.").

in the best position to assess [Plaintiff's] functioning." (Tr. 21). As Plaintiff puts it, this is "mixing up apples and oranges by saying that a 2009 consultative examination was given less weight that 2006 treatment notes." (Doc. 14, at 11). In short, the ALJ relied on 2006 notes as evidence of Plaintiff's 2009 condition. This is particularly problematic where the ALJ later stated there were no mental health records after September 2006, when the ALJ promised Plaintiff he would obtain those records. (Tr. 270 ("At this point I'll close the hearing. I'll get the updated records from Dr. [Welsh].")). Additionally, the ALJ himself stated he gave the greatest weight to Dr. Welsh's 2006 treatment notes and seemingly would have treated updated treatment records similarly.

Although an ALJ is not required, in most circumstances, to independently seek out a claimant's medical records, it is certainly also true that an ALJ may not tell a *pro se* claimant at a hearing that the ALJ will obtain the recent records, fail to do so, and then base his decision partially on the statement: "[T]he record contains no evidence of mental health treatment after September 2006." (Tr. 22). As a district court within the Sixth Circuit explained recently:

> An ALJ is only under an affirmative duty to obtain medical records if he imposes that duty upon himself at the hearing. Once an ALJ has communicated to a claimant that he will intervene and directly obtain the claimant's medical records from a medical care provider, the ALJ must follow through or else he will commit a procedural error that warrants remand. This is so because a claimant who has been told that his medical records will be obtained and considered by the ALJ will likely not make an effort on his own to obtain and submit the records. The claimant will simply trust that the ALJ will follow through. If the ALJ then fails to do so, the claimant clearly will be prejudiced.

*Morgan v. Astrue*, 2010 WL 3723992, *9 (E.D. Tenn.); *see also Brown*, 44 F.3d at 935-36 (holding remand necessary where ALJ indicated he would obtain updated medical records and did not and there was thus an "evidentiary gap involv[ing] recent medical treatment"). Here, the ALJ imposed such a duty on himself, and then disregarded it. Although the ALJ obtained an updated consultative

11

examination, as discussed above he discounted its findings in light of Dr. Welsh's (2006) treatment records, stating that Plaintiff's treating physician "is in the best position to assess [Plaintiff's] functioning." (Tr. 21).

Defendant argues that the other medical record evidence supports the ALJ's conclusion that Plaintiff was no longer disabled as of May 1, 2006. The evidence the Defendant cites, however, all comes from 2006 and earlier. This cannot be substantial evidence to support the ALJ's conclusion that Plaintiff's "disability ended on May 1, 2006 *and [Plaintiff] has not become disabled again since that date*." (Tr. 23 (emphasis added)). This is particularly so because the ALJ was required to compare Plaintiff's condition at the time of the hearing. *Difford*, 910 F.2d at 1320.

Because the ALJ was required to compare Plaintiff's current impairments to those at the time of the previous favorable decision, and his comparison lacks substantial evidence, remand for a new hearing is appropriate. The ALJ may well be correct in his conclusion that Plaintiff's condition has improved to the point where he is no longer disabled. However, because he failed in his duty to fully develop the record, and this left a gap in the medical evidence spanning the time period the ALJ was required to consider, remand is necessary. *See Brown*, 44 F.3d at 935-36; *Morgan*, 2010 WL 3723992, *9.[3]

---

[3] Plaintiff also briefly argues that the ALJ erred in failing to call a medical expert "even though there were complex medical issues involved in the case." The regulations give an ALJ discretion to determine whether to consult a medical expert. 20 C.F.R. § 416.927(f)(2)(iii) (ALJ "*may* . . . ask for and consider opinions from medical experts on the nature and severity of [a claimant's] impairment(s)" (emphasis added)). The failure to order additional testing is examined using an abuse of discretion standard. *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001). Plaintiff has failed to argue specifically what a medical expert would have added to the case here, and there is nothing to suggest the ALJ abused his discretion in not calling one.

*Credibility Analysis*

Plaintiff argues the ALJ erred in relying on Plaintiff's lack of treatment and inconsistent statements to discount Plaintiff's credibility. Specifically, Plaintiff objects to the ALJ's reliance on his lack of mental health records after 2006 and failure to seek low-cost or free treatment sources for back pain. Defendant argues the ALJ's credibility determination is supported by substantial evidence, namely, Plaintiff's failure to seek treatment for his back pain, and inconsistencies between the record and Plaintiff's statements regarding his level of activity.

The ALJ stated that Plaintiff's "allegations regarding his ability to work are less than fully credible due to lack of treatment and inconsistent statements." (Tr. 21). On review, the Court is to "accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). Still, an ALJ's decision to discount a claimant's credibility "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Social Security Ruling (SSR) 96-7p, 1996 WL 374186, *2. In reviewing an ALJ's credibility determination, the Court is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [claimant's testimony] are reasonable and supported by substantial evidence in the record." *Jones*, 336 F.3d at 476.

Because remand for a new hearing is appropriate as discussed above, and the ALJ will have to re-evaluate Plaintiff's credibility, it is not necessary to discuss the credibility determination at length. However, the Court notes that as discussed above, it was error for the ALJ to fault Plaintiff

13

for his lack of recent mental health records when the ALJ did not follow through on his promise to obtain them. Second, the ALJ erred in faulting Plaintiff for failing to seek low or no cost treatments for his back, when there was no evidence in the record that such options existed.  "In the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that a claimant will seek examination or treatment. A failure to do so may cast doubt on a claimant's assertions of disabling pain." *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 846 (6th Cir. 2004). A Social Security Ruling explains:

> [T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment prescribed and there are no good reasons for this failure. *However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide*, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.

SSR 96-7p, 1996 WL 374186, *7 (emphasis added). One example of a "good reason" for not seeking medical treatment is: "The individual may be unable to afford treatment and may not have access to free or low-cost medical services." *Id.* at *7-8. Plaintiff testified that he had not sought treatment for his back pain because he could not afford it.  The ALJ did not question him further about what low or no cost treatments might be available nor did the ALJ refer to anything specific in his decision. Faulting a claimant for failing to seek "low cost or no cost community resources" without first establishing that such resources exist is not a basis for discounting a claimant's credibility.

Because, on remand, the ALJ will have to reevaluate Plaintiff's credibility, the Court need not reach the question of whether, despite these errors, the ALJ's credibility analysis was supported by substantial evidence.

**Conclusion and Recommendation**

For the reasons stated above, following review of the arguments presented, the record, and applicable law, this Court finds the Commissioner's decision ceasing SSI benefits not supported by substantial evidence. The undersigned therefore recommends the Commissioner's decision be reversed and remanded for a new hearing consistent with this opinion.

s/James R. Knepp II<br>United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).